UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JULIO MORALES, ALEXIS HERRERA, DAVID
LOPEZ, and JOSE LUIS GUZMAN, Individually
and on Behalf of All Other Persons
Similarly Situated,

                   Plaintiffs,

         - against -

M. ALFONSO PAINTING CORP. and MANNY
ALFONSO,

                   Defendants.

------------------------------------------X

U___ SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/19/2013

**MEMORANDUM AND ORDER**

11 Civ. 1263 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Julio Morales, Alexis Herrera, and David Lopez (collectively, "plaintiffs") commenced this action against defendants M. Alfonso Painting Corp. and Manny Alfonso (together, "defendants"), asserting claims for unpaid overtime compensation under the Fair Labor Standards Act (the "FLSA") and the New York Labor Laws (the "NYLL"), and for "spread of hours" compensation under the NYLL.[1] In the motion before the Court, plaintiffs seek partial summary judgment as to defendants' liability. For the reasons set forth below, plaintiffs' motion is denied.

---

[1]    The fourth named plaintiff, Jose Luis Guzman, was dismissed from this action on July 12, 2012. <u>See</u> Endorsed Memo 1, July 12, 2012, Dkt. No. 19.

## BACKGROUND[2]

Between March 2007 and October 2008, plaintiffs performed cleanup and demolition at two constructions sites in Manhattan. Pls.' R. 56.1 ¶¶ 15-16.  Plaintiffs allege -- and defendants do not dispute, see Penkovsky Decl. Ex. 2 (hereinafter "Alfonso Dep."), at 61:20-62:3, 63:4-15 -- that plaintiffs did not receive overtime premiums for hours worked in excess of 40 per week, Pls.' R. 56.1 ¶ 24, or "spread of hours" compensation for days on which they worked more than 10 hours, id. ¶ 26.  On this motion, the sole issue before us is whether defendants were plaintiffs' "employer" under the FLSA, 29 U.S.C. § 203(d), and the NYLL, N.Y. Lab. Law §§ 190(3), 651(6).

Plaintiffs were hired for their positions by a man named Oscar Sanabria ("Sanabria"), Pls.' R. 56.1 ¶ 17, who is not a party to this action and, inexplicably, has not been deposed. Sanabria allegedly set plaintiffs' pay at a straight rate of

---

[2]    This background is derived from Plaintiffs' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pls.' R. 56.1"), filed February 13, 2013; the Declaration of David Stein, Esq., in Support of Plaintiffs' Partial Motion for Summary Judgment ("Stein Decl."), filed February 13, 2013, and the exhibits annexed thereto; Defendants' Counter-Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' R. 56.1"), filed March 28, 2013; and the Declaration of Nicholas A. Penkovsky in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Penkovsky Decl."), filed March 27, 2013, and the exhibits annexed thereto.
       Unless otherwise noted, citations to plaintiffs' Rule 56.1 statement incorporate the corresponding paragraph(s) of defendants' response and, thus, refer to undisputed facts.  Where facts are allegedly disputed, we have undertaken "an assiduous review of the record," Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks omitted), and present the facts in the light most favorable to defendants.

$10 per hour,[3] id. ¶¶ 17, 19, and delivered plaintiffs'
compensation, often in a mixture of check and cash, id. ¶ 20.
As relevant here, the checks were drawn upon the account of
defendant M. Alfonso Painting Corp. ("Alfonso Painting" or the
"Company"). Id. ¶ 23.

Alfonso Painting is operated out of the home of defendant
Manny Alfonso ("Alfonso"), id. ¶ 2, the Company's sole owner
and officer, id. ¶¶ 8-9.[4]    On May 1, 2012, the parties
deposed Alfonso concerning, among other things, his business
relationship with Sanabria and plaintiffs. See Alfonso Dep. 1.
During his deposition, Alfonso stated that Sanabria is a friend
of Alfonso's wife, see id. 69:5-8, and that Sanabria works as a
"super" for a company called I Labor, which "build[s] and
remodel[s] buildings," see id. at 68:3-20. But see id. 85:14-
20 (Alfonso testifying that Sanabria was not an employee of I
Labor but simply "did jobs for" the company).

According to Alfonso, one of Sanabria's responsibilities
at I Labor was to "pick up" people to work at construction
sites. Id. 68:15-18. Alfonso stated that, because Sanabria

---

[3]    Plaintiff Alexis Herrera received $13 per hour after assuming
supervisory tasks. Defs.' R. 56.1 ¶ 19.
[4]    Alfonso Painting performs work on behalf of both residential and
commercial customers, and owns equipment consisting of paint rollers, paint
brushes, ladders, and blankets. Id. ¶ 7.  In 2007, the Company's payroll
reached approximately 25 workers and $25,000 per week, Pls.' R. 56.1 ¶ 4,
and in 2008, the Company generated gross revenues that exceeded $500,000,
id. ¶ 3.

"didn't have a company" of his own, Sanabria requested that Alfonso "produce payrolls for him." Id. 68:18-20; see also id. 78:22-79:6 (Alfonso testifying that Sanabria asked him to do the "favor" of "producing payroll" because Sanabria "didn't have a company"). Alfonso apparently agreed.

Pursuant to the alleged arrangement, I Labor and Sanabria provided Alfonso with the names of employees and the number of hours they worked, and Alfonso paid these individuals using Company checks.[5]   Id. 70:7-13.   In exchange for Alfonso's services, I Labor paid Alfonso a premium of twenty to thirty percent of the payroll he issued. Id. 72:17-73:2; see also id. 79:19-20 (Alfonso testifying that he agreed to this arrangement because he was "looking to make money").

Alfonso stated that a company named "WBB Construction" initially funded the payroll he issued.   Id. 84:13-17; see also Penkovsky Decl. Ex. 4, at 84:17-85:6 (plaintiff Alexis Herrera testifying that "[e]veryone" at the worksite said that WBB Construction funded payroll).   According to Alfonso, the money "then started coming from [I Labor]," and, at other times,

---

[5]    Alfonso stated that he attempted to provide W2 statements to plaintiffs, had problems with their taxpayer identification numbers, and thus issued 1099 statements instead.   Id. ¶ 22.   Defendants have not produced the 1099s.

"from associations" and "partnerships."[6]  Alfonso Dep. 84:17-19.

Alfonso stated that there were "[s]ome weeks" when he did not receive money from any of these entities.  Id. 88:8-10.  On those occasions, Alfonso allegedly paid the employees using his "own money."  Id.; see also id. 57:20-58:16, 77:8-11 (Alfonso testifying that he paid by cash or personal check when there were insufficient funds in the Company's account).  To do so, Alfonso purportedly borrowed $250,000 in loans.[7]  Id. 87:22-88:20.

Despite this investment, Alfonso stated that he never worked at any of the construction sites, id. 60:13-16, and, indeed, never saw or met plaintiffs prior to the filing of this action, id. 47:11-48:7.  During their depositions, plaintiffs similarly testified that they never met Alfonso.  See, e.g., Penkovsky Decl. Ex. 3, at 21:14-16 (plaintiff Julio Morales stating:  "We didn't have any contact with Alfonso Painting. I'm just seeing [Alfonso] here now."); Penkovsky Decl. Ex. 4, at 12:2-7 (plaintiff Alexis Herrera affirming that he never met Alfonso).

---

[6]      During his deposition, Alfonso stated that he maintained copies of "[s]ome of the checks" he allegedly received from WBB Construction, I Labor, and/or other entities.  Alfonso Dep. 93:13-19.  Once again, defendants have not produced any of these materials.

[7]      Alfonso stated that I Labor currently owes him approximately $400,000, consisting of $250,000 in loans and $150,000 in unpaid commissions.  Id. 87:13-24.

Alfonso testified that he (and the Company) did not have the authority to hire or fire plaintiffs, id. 78:16-21, 124:3-5, or set their pay rates, id. 60:17-18.   Further, Alfonso stated that he (and the Company) did not create plaintiffs' payroll records, id. 55:16-18, or supply their work equipment, id. 99:15-17.   Alfonso indicated that he employed some supervisors at the construction sites.   Id. 22:20-23:5. However, Alfonso stated that it was employees from I Labor, and not the Company, who supervised plaintiffs, id. 124:6-7.

**DISCUSSION**

I.   **Summary Judgment Standard**

A motion for summary judgment is appropriately granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   In this context, "[a] fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted).   When making this determination, "the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment" is sought.

6

Winfield v. Trottier, 710 F.3d 49, 52 (2d Cir. 2013) (internal quotation marks omitted).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" Fed. Deposit Ins. Co. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where that burden is carried, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

## II. Analysis

Under the FLSA, to "employ" means "to suffer or permit to work."[8]   29 U.S.C. § 203(g). The "striking breadth" of this definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict

---

[8]   The NYLL's definition of employment is nearly identical to the FLSA's. See N.Y. Lab. Law § 2(7) (McKinney 2011) ("'Employed' includes permitted or suffered to work."). Therefore, courts in this Circuit have interpreted the term 'employer' under the NYLL "coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) (internal quotation marks omitted).

application of traditional agency law principles." Barfield v.
N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)
(quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326
(1992)) (internal quotation marks omitted).   In this Circuit,
the question of "whether an employer-employee relationship
exists" is a fact-intensive inquiry that is "grounded in
economic reality rather than technical concepts." Irizarry v.
Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (internal
quotation marks omitted); see also Barfield, 537 F.3d at 141-42
(noting that employment under the FLSA is "a flexible concept
to be determined on a case-by-case basis by review of the
totality of the circumstances").[9]

In assessing the "economic reality" of a particular
employment situation, the Court of Appeals has identified
various sets of factors, each with a different purpose.
Irizarry, 722 F.3d at 104.   In Carter v. Dutchess Community
College, 735 F.2d 8 (2d Cir. 1984), the Court of Appeals
adopted a four-factor test to determine whether an alleged
joint employer exercised "formal control" over an employee.
Barfield, 537 F.3d at 143.   Those factors include "whether the
alleged employer (1) had the power to hire and fire the

---

[9]      To be held liable under the FLSA, an employer must also be "engaged in
commerce or in the production of goods for commerce."   See 29 U.S.C.
§ 203(s)(1) (defining term).   This is apparently not at issue here, as the
parties do not address this threshold requirement.

employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 142 (internal quotation marks omitted).

Subsequently, in Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003), the Court of Appeals articulated another set of factors for determining whether an alleged employer "has functional control over workers even in the absence of the formal control measured by the Carter factors." 355 F.3d at 72. Specifically, the Court analyzed: "(1) whether [the putative joint employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [putative joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative joint employer]." Id.

The Court of Appeals has repeatedly emphasized that these factors are neither dispositive nor exclusive. Id. at 75; see

9

also Barfield, 537 F.3d at 143 (stating that there is "no rigid rule for the identification of an FLSA employer"). Therefore, a district court is "free to consider any other factors it deems relevant to its assessment of the economic realities." Zheng, 355 F.3d at 72-73. Given the fact-intensive nature of this inquiry, the question of whether an employee-employer relationship exists is rarely amendable to summary judgment. Barfield, 537 F.3d at 143-44; see also Zheng, 355 F.3d at 76 n.13 (noting the "fact-intensive character of the joint employment inquiry").

Such is the case here. Upon cursory examination, it would appear as though defendants did not maintain formal or functional control over plaintiffs. See, e.g., Alfonso Dep. 55:16-18, 60:17-18, 78:16-21, 99:15-17, 124:3-7 (Alfonso testifying that he did not hire, fire, or supervise plaintiffs; set their pay rates or create their payroll records; or provide their work equipment). However, the sole basis for that conclusion -- Alfonso's deposition testimony -- raises serious questions of fact and credibility that cannot properly be resolved on a motion for summary judgment. For instance, if Alfonso Painting's sole function was to "produce payroll" for Sanabria, I Labor, and/or WBB Construction, id. 68:12-13, it is difficult to comprehend why Alfonso would personally incur $250,000 in debt to make the companies' payments, see id.

10

87:22-88:20.   The   arrangement   between   Alfonso   and   Sanabria would   appear   to   be   unconventional   at   best   and   highly questionable   at   worst.    Without   the   benefit   of   full   document discovery   and   deposition   testimony   from   Sanabria   and   others, the   record   is   insufficient   to   determine   whether   the   "economic realities"   of   this   case   warrant   defendants'   liability   for   FLSA and   NYLL   violations   that   Alfonso   himself   has   acknowledged.

## CONCLUSION

For   the   foregoing   reasons,   plaintiffs'   motion   for   partial summary   judgment   (docket   no.   22)   is   denied   without   prejudice   to renewal   upon   further   development   of   the   record.

Dated:      New York, New York
            September 19, 2013

NAOMI   REICE   BUCHWALD
UNITED   STATES   DISTRICT   JUDGE

11

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**<u>Attorneys for Plaintiffs</u>**

David Stein, Esq.
Michael Samuel, Esq.
Samuel & Stein
38 West 32nd Street, Suite 1110
New York, NY 10001

**<u>Attorney for Defendants</u>**

Nicholas A. Penkovsky, Esq.
Law Offices of Nicholas A. Penkovsy, P.C.
One Riverdale Avenue, Suite 1 East, Box 12
Riverdale, NY 10463